# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| REGINALD KIBBY, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 4:07CV1123 DJS/TIA |
| MIKE KEMNA, | ) ) ) |
| Respondent. | ) ) |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation on dispositive matters and for rulings on non-dispositive matters. Having reviewed the case, the undersigned recommends that the petition be dismissed.

### Background

A City of St. Louis jury convicted petitioner of one count of first-degree murder, one count of first-degree robbery, and one count of armed criminal action. The trial court sentenced petitioner, a prior and persistent offender, to life imprisonment without the possibility of probation or parole on the murder count and twenty-five years on each of the other counts, the sentences to be served concurrently.

The evidence before the jury demonstrated that on October 29, 1996, petitioner and his cousin, Charles Lowery, were smoking crack cocaine and petitioner wanted to get some more. They went to a pawn shop to get a loan. At the pawn shop, petitioner stabbed Leroy McCollough, the shop's owner, to death over a thirty-minute period because McCollough would not accept a cell phone as collateral for a loan. During that period, McCollough pleaded for his life and offered petitioner cocaine. After pocketing the cocaine, petitioner stabbed McCollough again and told him "shut up die mother fucker."

Petitioner then stole McCollough's money, drugs, and other items from the pawn shop. He put his bloody clothes in a pillowcase, washed his hands, put on a new shirt, stole McCollough's shoes, and left. He threw the murder weapon onto the roof of an abandoned building.

Lowery panicked when they returned to petitioner's house. Petitioner told him to calm down or "he would get the same thing." Petitioner remembered that he had forgotten something at the pawn shop. After the police left, he went and retrieved a bag. He then went back to his house and got high. He later told his wife that he killed McCollough; also, she noticed blood on his clothes when he returned from the pawn shop after the murder.

Robert Taylor, petitioner's brother-in-law, testified at trial that in August 1996, petitioner suggested robbing McCollough in his shop. On the morning of the first day of trial, petitioner told Taylor to lie about a hat found under McCollough's body so that petitioner "could get a mistrial." Petitioner also gave Lowery an affidavit to sign recanting his earlier statements to the police incriminating petitioner.

Petitioner also told Craig Suddoth, a fellow prisoner, that if he was released he was going to kill anyone who knew he committed the murder in order to keep them silent. Petitioner specifically referred to killing his wife, his girlfriend, and his mother-in-law.

## Grounds for Relief

1. The trial court erred in finding Kibby's wife, Barbara Kibby, to be a competent witness.

2. The trial court erred in allowing the state to voir dire the venire about whether they would disbelieve witnesses who had received immunity from prosecution in return for their truthful testimony.

3. The trial court erred in allowing the prosecutor to read portions of Craig Suddoth's prior inconsistent statements.

4. The trial court erred in allowing the prosecutor's closing argument that Kibby had not presented any evidence that he was "not guilty" or that he "did not commit these crimes."

5. Trial counsel was ineffective for failing to object when the prosecutor made a direct reference to a previous mistrial on the same charges.

6. Trial counsel was ineffective for failing to object to the prosecutor's definition of "deliberation" in closing argument.

7. Post-conviction counsel was ineffective for failing to raise in the amended post-conviction relief motion a claim that trial counsel was ineffective for failing to test the blood found on Kibby's jeans.

8. Post-conviction counsel was ineffective for failing to raise in the amended post-conviction relief motion a claim that trial counsel was ineffective for failing to object to Detective Brian McGlynn's testimony that he read Kibby his Miranda rights.

9. Post-conviction counsel was ineffective for failing to raise in the amended post-conviction relief motion a claim that trial counsel was ineffective for failing to object to Barbara Kibby's testimony that her testimony was coerced by threats.

10. Post-conviction counsel was ineffective for failing to raise in the amended post-conviction relief motion a claim that trial counsel was ineffective for failing investigate the lack of a court order authorizing the video deposition of Charles Lowery.

**Standard**

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or

"was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

## Discussion

**I.     Grounds 7, 8, 9, and 10 are not Cognizable in This Proceeding**

In grounds seven, eight, nine, and ten, petitioner alleges that postconviction counsel was ineffective for failing to raise certain claims. Post-conviction counsel's ineffectiveness cannot provide the basis for habeas relief. 28 U.S.C. § 2254(i). As a result, these grounds are not cognizable in this proceeding.

## II. Grounds 1, 2, 3, 4, 5, and 6 Fail on the Merits

### A. Ground 1

Petitioner contends that the trial court erred in finding Barbara Kibby to be a competent witness in violation of the Fourteenth Amendment. Petitioner claims that Barbara Kibby lacked the mental capacity to remember the events that were the subject of her testimony or the ability to accurately describe those events.

The Missouri Court of Appeals denied this claim. The court held that a witness is presumed competent to testify except if any of the exceptions in Mo. Rev. Stat. § 491.060(1) (2000), including mental incapacity, are met, and that the review was for abuse of discretion. Resp. Exh. E at 2-3.

The appellate court held that the trial court did not abuse its discretion for three reasons. First, the trial court held a pretrial hearing to determine if Ms. Kibby was competent to testify. Resp. Exh. E at 3. At that hearing, Ms. Kibby testified that she remembered the events on the night of the murder and discussed those events. Id. The trial court determined, and the court of appeals agreed, that any discrepancies in Ms. Kibby's testimony went to the weight of her testimony, not her mental competency. Id. Second, the appellate court rejected petitioner's contention that the State's leading questions on direct examination was conclusive proof of Ms. Kibby's limited mental competence. Resp. Exh. E at 3. The court found that the leading questions were "a

direct result" of petitioner's motion in limine and were agreed to by petitioner's attorney and the prosecutor. Id. Finally, the court found that petitioner failed to produce any evidence that Ms. Kibby had a history of mental illness and thus failed to rebut the presumption that a person not confined to a mental institution is presumed competent. Resp. Exh E at 3-4 (citing State v. Newton, 963 S.W.3d 295, 297 (Mo. Ct. App. 1997)).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). The Missouri courts' resolution of this claim was based entirely on state law. Additionally, the courts' decisions were not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. As a result, petitioner is not entitled to habeas relief on this ground.

**B.    Ground 2**

Petitioner contends that the trial court erred in allowing the state to question the venire about whether they would disbelieve witnesses who had received immunity from prosecution in return for their truthful testimony.

During voir dire, the following exchange took place:

> In this case, I expect that you will hear that a person was granted immunity from prosecution. Now I expect that you will hear that this person was merely a witness but he was there. And he was there with the defendant. I expect you will hear what he has to say about the case. But to be fair, you will hear that he was granted immunity. At one point he was arrested and charged with this case as a coactor with the Defendant then he subsequently was released. Because of the way the evidence is, is there anyone here who feels they will automatically disregard everything that person says or could you at least listen to it, weigh it, and decide whether you believe them or not?
>
> . . .
>
> [I]n this situation the person . . . was granted immunity which means he can't be prosecuted for him giving information in terms of what he saw. He is not going to be prosecuted at all, okay. I'm going to be right up-front with you an anybody else on that. This guy is not charged at this point, he will not be charged unless he lies.
>
> . . .
>
> I can't tell you everything that's going [to] be said in the case. . . . But I can tell you that in this particular case there is somebody who, it's not a plea bargain, at this point the charges were dismissed against him. He's granted immunity. And without, again going into all the details, he, if things go as expected he will not—he will not face charges. In other words, nothing that he says that he did or didn't do is gonna get him charged in this case. Now if he gets up and admit ball face perjury and things like that, that may change the issue for him, okay.

Resp. Exh. A-2 at 214-22.

Petitioner argues that the introduction of the immunity agreement, specifically the fact that the government would prosecute the witness if the witness lied on the

-8-

stand, violated his right to a fair trial because it amounted to the prosecutor "vouching" for the credibility of the witness.

The Missouri Court of Appeals denied this claim, finding that there was no impermissible vouching. "Improper vouching occurs when a prosecutor refers to facts outside the record, implies that a witness's testimony is supported by facts not available to the jury, gives an implied guarantee of truthfulness, or expresses a personal opinion regarding witness credibility." United States v. Mullins, 446 F.3d 750, 760 (8th Cir. 2006). In its finding, the court relied on State v. Wolfe, 13 S.W.3d 248 (Mo. banc 2000). In Wolfe, the Missouri Supreme Court held that introducing all of the details of an immunity agreement, including the provision that states the immunity is in consideration for truthful testimony, did not constitute improper vouching. Id. at 256. The court found that "an immunity agreement not only supports the witness' credibility by showing an interest to testify truthfully, but also impeaches the witness' credibility by showing an interest in testifying favorably for the government, regardless of the truth." Id.

The state court's decision, and its reliance on Wolfe, is not contrary to or an unreasonable application of clearly established federal law. E.g., United States v. Drews, 877 F.2d 10, 12 (8th Cir. 1989) (introduction of witness's plea agreement, including terms requiring truthful testimony, permissible because the agreement both

bolstered and impeached the witness's credibility). As a result, petitioner is not entitled to relief on this ground.

**C. Ground 3**

Petitioner contends that the trial court erred in allowing the prosecutor to read portions of Craig Suddoth's prior inconsistent statements.

Suddoth testified at petitioner's trial for the prosecution. Suddoth testified that petitioner had told him that he killed Leroy McCollough by stabbing him to death. Resp. Exh. A-5 at 736-37. Initially, Suddoth refused to answer the prosecutor's questions because he had been identified as a "snitch" by other inmates and those inmates had threatened to kill Suddoth because of his testimony. Resp. Exh. A-4 at 671-75. When the judge ordered Suddoth to answer the questions, Suddoth began stating that he could not remember what petitioner told him. Id. at 684.

Before the trial, Suddoth had made a statement to the police regarding his conversations with petitioner. Suddoth had also been deposed; petitioner's trial counsel attended the deposition. To refresh Suddoth's memory, the prosecutor moved the court to allow him to read portions of the police transcript and the deposition transcript. Id. at 678-81. Petitioner objected and moved for a mistrial. Id. The court overruled the objection. Id.

The prosecutor then began using the transcripts to refresh Suddoth's recollection. Id. at 689-721. Suddoth gave equivocal answers to the prosecutor's questions, in which he did not state whether he remembered the statements he made to the police or not. Id.

On cross-examination, however, Suddoth stated that despite his fear he would cooperate with the court and with counsel. Resp. Exh. A-5 at 725. At that point, Suddoth began directly testifying about his conversations with petitioner. Suddoth testified that petitioner told him that petitioner had gone to McCollough to borrow money but that McCollough refused and, as a result, petitioner stabbed McCollough to death. Id. at 736-37. On recross-examination, Suddoth admitted that he had been lying when he testified that he could not remember the substance of the police and deposition transcripts. Id. at 744.

The Missouri Court of Appeals reviewed this issue under an abuse of discretion standard. Resp. Exh. E at 6. The court found that there was a sufficient foundation for the admission of the prior inconsistent statements. Id. at 7. The court further found that any questions regarding the truth of Suddoth's testimony were for the jury to decide. Id. at 8.

This Court is generally not free to reexamine evidentiary rulings made by the trial court and affirmed by the Missouri Court of Appeals. Bounds v. Delo, 151 F.3d 1116,

1119 (8th Cir. 1998). "The only question for our review is whether the evidentiary rulings constituted a constitutional violation. 'A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" Id. (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)).

Even if the trial court's evidentiary rulings with regard to Suddoth's prior inconsistent statements were erroneous, they were not so conspicuously prejudicial as to implicate the Due Process Clause. Suddoth's testimony was only a small part of the state's case. Several other witnesses testified against petitioner, including his wife. Resp. Exh. A-3 at 500. And Suddoth eventually cooperated with the court and testified freely. If anything, Suddoth's admission to the court that he was lying about the fact that he could not remember what he had told the police served to impeach his testimony. The state court's decision was not contrary to or an unreasonable application of clearly established federal law. As a result, petitioner is not entitled to relief on this ground.

**D.     Ground 4**

Kibby contends that the trial court erred in allowing the prosecutor's closing argument that Kibby had not presented any evidence that he was "not guilty" or that

he "did not commit these crimes." Specifically, petitioner takes issue with these statements made by the prosecutor:

> The evidence that I have presented to you is uncontradicted, ladies and gentlemen. It is uncontroverted. That is the evidence in the case. If there were any other evidence—if there was evidence that shows that the Defendant did not commit these crimes—
>
> . . .
>
> As I was saying, ladies and gentleman, if there were [any] evidence to show that the Defendant is not guilty or to show that the State's [witnesses] were lying that could have been presented and that could have been pointed out in cross-examination. But there is none. There is none. I would ask you to base your decision upon the evidence that exist[s].
>
> Now Defense counsel will have the opportunity to argue the case. I certainly respect his rights to do that but if he starts arguing things that aren't in the evidence, you ask yourself why. If he starts trying to draw conclusions you don't see from the evidence or talk about things that you didn't see in the evidence, you ask yourself why. Maybe you don't need the answer but I'll give it to you. And that's because the evidence convicts this man. The evidence makes it clear that he is guilty of first degree murder, first degree robbery and armed criminal action.

Resp. Exh. A-5 at 814-17.

The Missouri Court of Appeals considered this issue and applied the abuse of discretion standard. Resp. Exh. E at 8. The court stated, "Unless there is a reasonable probability that, in the absence of [the prosecutor's] comments, the verdict would have been different, an abuse of discretion will not be found. Id. at 9.

Under clearly established federal law, prosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render petitioner's conviction a denial of due process. Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998). Thus, the state court identified the correct legal rule. And the state court applied the rule reasonably to the facts of the case. There was an abundance of evidence pointing to defendant's guilt. These few comments regarding the absence of evidence in defendant's favor did not render the conviction a denial of due process. The state court's decision was not contrary to or an unreasonable application of clearly established federal law. As a result, petitioner is not entitled to relief on this ground.

**E.     Ground 5**

Petitioner contends that trial counsel was ineffective for failing to object when the prosecutor made a direct reference to a previous mistrial on the same charges in his examination of Robert Taylor, petitioner's brother in law.

During direct and redirect examination of Taylor, the following exchange took place:

| | |
|---|---|
| [Prosecutor]: | Okay. And specifically did you see [petitioner] today at some point? |
| [Taylor]: | Yes, sir. |

| [Prosecutor]: | Can you explain to the jury the circumstances under which you saw him? |
|---|---|
| [Taylor]: | Well, I was brung from my — my cell off of tier one down to the holding cell downstairs. And [petitioner] and about two more guys was coming through. I was already in this holding cell. So he come to the door, we spoke and he was telling me about Leroy's wife suppose to have identified a hat that was lying under him and was saying something about that was her husband's hat. And he told me to lie for him, to switch it up so he could get a mistrial. |
| . . . | |
| [Prosecutor]: | All right. And you said that he told you he wanted you to lie? |
| [Witness]: | Yes. |
| [Prosecutor]: | Change your story so he could get a mistrial— |
| [Witness]: | Right. [Prosecutor]: cause he already had one mistrial? Did he tell you about other things about the case this time and one of the reasons he wanted you to lie or something? |
| [Witness]: | Yes. |

Resp. Exh. A-4 at 599-600, 620-21.

Petitioner's trial counsel did not object during this exchange. Petitioner argues that the reference to his previous mistrial along with the statement that he wanted to

force a second mistrial prejudiced his trial because the jury would have wanted to punish him for having twice attempted to force a mistrial.

The Missouri Court of Appeals analyzed this claim under the Strickland standard. Resp. Exh. I at 2-3. The court found that the prejudice petitioner alleged was nothing more than "[c]onjecture and speculation . . ."

The Missouri Court of Appeals applied the correct legal rule to this issue. And the court's decision was not unreasonable. There was an overwhelming evidence of guilt introduced in petitioner's trial. This one isolated reference to a previous mistrial did not prejudice his case. The state court's decision was not contrary to or an unreasonable application of clearly established federal law. As a result, petitioner is not entitled to relief on this ground.

**F.     Ground 6**

Petitioner contends that trial counsel was ineffective for failing to object to the prosecutor's definition of "deliberation" in closing argument.

During closing argument, the prosecutor said to the jury:

Because the only difference between first degree murder and second degree murder as defined in Instruction Number Six is the idea of deliberation. Which is the idea of cool reflection upon a matter for a period of time, no matter how brief. That's enough. If you find that at any point (Counsel snapped his fingers) the Defendant had a chance to reflect on what he was doing for even a split second; was capable of making a conscious choice to stop what he was doing or to go forward

-16-

then he is deliberating. But if you decide for some reason that he didn't deliberate then you consider second degree murder. If you decide that you're not certain whether he actually stabbed the Defendant or the victim or that he didn't mean to stab him or that somehow these repeated over and over thrusting into this man's throat and abdomen, that he didn't understand that that was going to kill him then you go to—go to Instruction Number Seven and decide if he is guilty of murder second degree in what is known as felony murder.

. . .

But I would submit to you that a—a reasonableness of the evidence shows that he is guilty of murder in the first degree. What is deliberation? As I've said, it's the ability to make a conscious choice. First degree murder does not require that there be some drawn out plan ahead of time.
. . .

Resp. Exh. A-5 at 806-07.

The Missouri Court of Appeals again analyzed this claim under the Strickland standard. Resp. Exh. I at 6. The court found that petitioner did not establish that he was prejudiced by the prosecutor's statements because the jury was properly instructed on the definition of "deliberation"[1] and because there was overwhelming evidence that petitioner acted with deliberation as defined by statute. Id.

The Missouri Court of Appeals applied the correct legal rule to this issue. And the court's decision was not unreasonable. The evidence introduced at trial showed that petitioner stabbed McCollough to death over a thirty minute period. Id. During

---

[1] Deliberation is defined as "cool refection for any length of time no matter how brief." Mo. Rev. Stat. § 565.002(3).

-17-

the attack, McCollough offered cocaine to petitioner, which petitioner took and then resumed stabbing him. Id. Petitioner told McCollough, "'[s]hut up, die, mother fucker'" during the attack. Id. And after the attack was over, petitioner "removed his bloody clothes, changed into clean clothes, washed up in the bathroom, took his shoes off and put [McCollough's] shoes on, and then snuck away from the scene because there were people knocking at the door." Id. Under these circumstances, petitioner cannot show that he was prejudiced by the prosecutor's remarks in closing argument. The state court's decision was not contrary to or an unreasonable application of clearly established federal law. As a result, petitioner is not entitled to relief on this ground.

**III.   Petitioner is Not Entitled to an Evidentiary Hearing**

Petitioner has moved the Court for an evidentiary hearing. The Court has reviewed the answer, the traverse, the transcripts, and the state court record and has determined that it is unnecessary to hold an evidentiary hearing. Rule 8(a) of the Rules Governing § 2254 Proceedings. As a result, petitioner's motion for an evidentiary hearing will be denied.

**Conclusion**

The state courts' rulings on petitioner's grounds for relief were not contrary to or an unreasonable application of federal law as established by the Supreme Court. As a result, petitioner is not entitled to federal habeas relief. Additionally, petitioner has

failed to make a substantial showing of the denial of a constitutional right. In consequence, the undersigned recommends that no certificate of appealability issue.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner's motion for evidentiary hearing [#17] is **DENIED**.

**IT IS HEREBY RECOMMENDED** that petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed without further proceedings.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability issue. 28 U.S.C. § 2253.

The parties are advised that they have fourteen (14) days to file written objections to this Report and Recommendation. Fail to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this  20th  day of August, 2010.

                                             /s/ Terry I. Adelman        
                                     UNITED STATES MAGISTRATE JUDGE